At a Court of Oyer and Terminer held at this term, George Draper, negro, was indicted and tried for the murder in the first degree, of John Wilson, negro, in Middletown, on the twenty-second day of September preceding. The prisoner was at that time the tenant of a house and lot in the place belonging to the deceased, and by the terms of the letting was bound to maintain the fences on the lot in good repair, one of which in particular he had neglected, notwithstanding the repeated requests of the deceased and his repeated promises that it should be repaired without further delay. On the day above mentioned the prisoner was chopping fire-wood in the lot near his house and near to, but within the fence referred to, when the deceased walked up the street and stopped on the side-walk outside of it near his house and spoke to the prisoner again about putting up the fence, when a quarrel at once arose between them for a few moments during which the prisoner had approached quite near to the fence on his side of it with his axe in his hand, the deceased standing on the side-walk a few steps from it and from the prisoner and facing him. During their angry wrangle over the matter the prisoner had said to the deceased that it was nothing to him whether he put the fence up, or not, to which the deceased replied that if he did not put it up he would sue him, when the prisoner responded with an oath that if he didn't go away from there *Page 532 
he would knock his head off, and closed his threat with the words, "you old black devil!" The deceased instantly replied to him that he was tired of being called black devil, and stepping straight up to the fence in front of him, added "you have threatened to knock my head off, now knock it off!" The prisoner immediately raised the axe and struck him a blow with it on his right shoulder partly and on his breast it came down. The deceased then turned around from him, took a few steps into the road and fell dead in it. The prisoner as soon as he saw him fall went to him without his axe and was asked by a witness of the whole occurrence who had hastened up to him at the same time, "George, why did you do that?" when he replied that he didn't know what he was about," and then said he would go to the town hall and give himself up, and at once started in that direction; and it was further proved that he soon afterwards met with a peace officer, confessed the killing and surrendered himself into his custody. The gash made with the axe was from the neck obliquely downward on the breast, about five inches in length and two in depth, and was necessarily almost instantaneously fatal. The prisoner proved that his character for peace and good order had before been good.
that if the prisoner killed the deceased with express malice aforethought it would constitute the crime of murder of the first degree under the statute, but if he did it with implied malice, as it was termed in contradistinction to express malice, it was murder of the second degree under it, for malice was the essential ingredient and criterion of the crime of murder, and consisted of either express or implied malice. At common law it was murder of the same grade whether it was committed with express, or implied malice; but our statute had divided it into two degrees, making it murder of the first degree when *Page 535 
committed with express malice, and murder of the second degree when committed with implied malice. And the rule that every person is presumed to contemplate the ordinary and natural consequences of his own acts, applied even in capital cases, and in murder even of the first degree under the statute. Therefore, when one man is found to have killed another, if the circumstances attending the act of killing do not of themselves show that it was not intended, but was accidental, it is to be presumed that the death of the deceased was designed by the slayer; and the burden of proof is on him, to show that it was otherwise. And because, ordinarily, no man may lawfully kill another, and intentional homicides are in general the result of malice and evil passions, or proceed from a heart regardless of social duty and fatally bent on mischief, in every case of intentional homicide, not otherwise explained by its circumstances, it is further to be presumed that the slayer was actuated by malice; and here also the burden of proof is on him, to show that he was not, but the act was either justifiable or excusable.
As he had before remarked, the chief characteristic of the crime of murder distinguishing it from every other species of homicide, and therefore indispensably necessary to be proved, is malice prepense or aforethought. This term, however, is not restricted to spite or malevolence towards the deceased in particular, but it is understood to mean that general malignity and recklessness of the lives and personal safety of others, which proceeds, as I have before stated, from a heart void of a just sense of social duty, and fatally bent on mischief. And whenever the fatal act is committed deliberately, or without adequate provocation, the law presumes that it was done in malice; and it behooves the prisoner to show from evidence, or by inference from the circumstances of the case that the offense is of a mitigated character, and does not amount to murder of either degree under the statute.
Express malice, the principal characteristic, as I have before said, of murder of the first degree is proved by evidence of a deliberately formed design to kill another; *Page 536 
and such design may be shown from the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, knowing it to be such, a preconcerted hostile meeting, whether in a regular duel with seconds, or in a street fight mutually agreed on, or notified and threatened by the prisoner, privily lying in wait, a previous quarrel or grudge, the preparation of poison, or other means of doing great bodily harm, or the like. Implied malice, the characteristic of murder of the second degree, is an inference or conclusion of law upon the facts found by the jury, and among these the actual intention of the prisoner becomes an important fact; for though he may not have intended to take away life, or to do any personal harm, yet he may have been engaged in the perpetration of some other felonious or unlawful act, from which the law raises the presumption of malice. Thus if one attempts to kill or maim A, and in the attempt, by accident kills B, who was his dearest friend, or darling child, or if one in the attempt to procure an abortion, causes the death of the mother, or if in a riot or fight one of the parties accidentally kills a third person who interfered to part the combatants and preserve the peace, the law implies malice, and the slayer is guilty of murder, but murder of the second degree now under our statute, because of being committed with implied malice.
Manslaughter differs from murder of either degree principally in this, that in the latter there is the ingredient of malice, while in the former there is none: or as Blackstone expresses it, manslaughter when voluntary, arises from the sudden heat of the passions, murder from the wickedness of the heart. Manslaughter is therefore defined to be the unlawful killing of another without malice, either express or implied. And for that reason on a trial "for murder, if there is no sufficient evidence of malice, either express or implied as before defined and explained, and the act of killing being proved, is not justified nor excused, the jury must return a verdict for manslaughter. It is of two kinds, voluntary and involuntary manslaughter. *Page 537 
But there is no occasion to speak of any but the first mentioned in this case. Voluntary manslaughter is where one person kills another in the heat of blood; and this usually arises from fighting or from provocation, and in case where the parties have been fighting with each other, and one kills the other, in order to reduce the crime from murder to manslaughter, it must be shown that there was not sufficient time for the passion to subside before he did it. And though there was not time for passion to subside, yet if the case be attended with such circumstances as indicate malice in the slayer, he will be guilty of murder. Thus if the slayer provide himself with a deadly weapon beforehand, in anticipation of the fight, and not for mere defense of his person against a felonious assault, or if he take an undue advantage of the other in the fight, or if, though he were in the heat of passion, he should designedly select out of several weapons equally at hand, that alone which was deadly, it is murder and not manslaughter, because of the implied malice, at least, indicated in such cases. But where homicide is committed upon provocation, it must appear that the provocation was considerable, and not slight only in order to reduce the offense from murder to manslaughter; and for this purpose the proof of reproachful words how grevious soever, or of actions or gestures expressive of contempt or reproach, without an assault, actual or menaced, on the person, will not be sufficient, if a deadly weapon be used.
Such was the law in general on the subject describing the nature and characteristics, and defining the distinctions and gradations, of murder in the first and second degree and voluntary manslaughter; and it only remained for him to add with reference to that case that no quarrel between the parties, or angry altercation or dispute between them, or mere threat uttered, or language used, or motion or gesture made by the deceased towards the prisoner during their brief wrangle about putting up the fence, however insulting or provoking they might have been, and however much they might have exasperated the prisoner, *Page 538 
or excited his anger and passion and heated his blood, unless the deceased made or menaced an actual assault upon his person, could constitute a sufficient provocation to mitigate and reduce the killing of him with such a deadly weapon as an axe, however sudden and unpremeditated might have been the single blow inflicted with it, to the crime of manslaughter. So far as the evidence shows there was but one threat, and that a conditional one, made by the deceased, and that was, that if the prisoner did not put up the fence, he would sue him, and which, he had a legal right to do, provided the prisoner was legally bound to repair it, and which he answered with a conditional threat of a very violent and outrageous character, and with an oath that if he, the deceased, did not go away from there, he would knock his head off, having about or a little before that time and during their quarrel stepped up nearer to the fence with the axe in his right hand and further insulting the deceased at the same time by calling him a black devil; and it was that threat and that epithet which appeared to provoke the deceased to step up to him on the other side of the fence and barely within the reach of his axe, and to simply say to him as he stood before him with his hands in his pockets, he was tired of being called a black devil, and as he had threatened to knock his head off, then knock it off, when the prisoner already in a high state of anger and passionate excitement instantly raised the axe, and with a downward blow of it inflicted the fatal gash of five inches in length and two in depth on the right side of the breast of the deceased, and of which he died after turning around from him and taking a few steps into the street. And on that simple statement of the facts and circumstances of the ease as detailed by the witnesses, the Court would leave it to the jury, to whom it properly and solely belonged, to decide whether there was anything in that act or motion of the deceased, or in any other act or motion of his on the occasion, so far as the evidence went, that indicated any assault, either made or menaced by him upon *Page 539 
the person of the prisoner. If there were, the offense amounts to voluntary manslaughter, but if not, then there was no provocation proved in the case that could reduce the homicide to the grade of manslaughter. Nor could the facts that the prisoner at once declared that he did not know what he was about when he struck the blow, and soon afterwards confessed the homicide and voluntarily surrendered himself into the custody of a peace officer, or his previous character for peace and good order, contribute in any degree to qualify the conclusion of the law in regard to the felonious act committed by him, according as it might be determined by the jury from his own confession and the evidence, or to mitigate and reduce it to the offense of manslaughter.
 Verdict — Guilty of murder of the second degree.